Good morning, your honor. Terry Vela and Christine Bergstrom from Nevada Legal Services representing the plaintiff, Edward Zimbelman, in this matter. At this time I'd like to reserve two minutes for rebuttal. All right, go ahead. You have to keep track of that yourself, but as you can tell, we don't care. We just kind of eat right into it. But that should be a good thing for you because if we're asking you questions, that's a sign we want to know what you got to say about it. Thank you. In this case, your honor, there is no legal basis to evict Mr. Zimbelman and to terminate his subsidy, and all of the housing authorities' attempts to rationalize their actions emphasize the arbitrary decisions that they exercise over housing. The hearing officer's decision in the record at 39 through 41 cited to HUD Notice 2012-28, excuse me, and that itself is a, quote, statutory and regulatory clarification of federal regulations pertaining to admissions. I hate to interrupt you, but I'm going to. To me, we have appealed here the district court's order denying a preliminary injunction, correct? That's the standard that I have to look at for whether the district court did the right thing in denying the preliminary injunction. It's abuse of discretion. All right, it's an abuse of discretion. So what does that mean to you? Well, the facts here are not disputed. What does that mean to you? What does the district court have to do to abuse its discretion? In this case, the legal error that they Well, just a minute. Isn't the thing that you have to do if you're going to have a preliminary injunction, you have to look at four factors? Yes, that's correct. And it seems to me that maybe even if you win on the legal factor, which would be succeed on the merits, there are three other factors that are also important, are there not? That's correct. Okay, so you're addressing the first likely to That's correct. So you suggest your client is likely to succeed on the merits? Yes. There's a statute and a regulation and a lease agreement and a policy, as I read the record. All of them say that this individual, a registered sex offender, can't live there. They can't rent to him. And in the transcript, the district court asked you about this, or somebody, asked counsel about this repeatedly and said, are you saying that since they made a mistake, they can never evict him, essentially? And what I read continuously from the transcript is that the response was, they can't do it this way. But there wasn't really an answer to the question about whether your expectation is they really can't correct this mistake. After all, the lease term is up, right? That's correct. The one-year lease, and that's up. So your position is they can never correct this, or? Well, there's a few things that I want to address in there. And the first thing is that you can't correct a mistake by creating another mistake, which is why I started with the ---- But your position is they're obliged to renew this lease. That has to be your position today. Because of the knowledge that they had due to Mr. Zimbelman's disclosure of his registered sex. I don't think it's contested that he disclosed. And they've missed it. They made a mistake. That's what the district court thought. Why is it they can't, they are obligated now, now that they do know, to enter into a new lease term? Because the provisions in D.L. that provide for leases make them renewable on an annual basis. And there is no termination authority per statute or regulation to terminate for registrant status. Well, there's no termination authority because the statute, with regard not to the sex offenders, is they can't be in there, period. So naturally enough, Congress didn't provide in the Act for any termination authority. So I guess the result then you'd say is he can live there the rest of his life? Well, there, 13,663 is the statute that we're talking about. And it denies admission, but it does not contemplate termination. So answer the question. Are you saying, then, he's there for the rest of his life? They cannot use his registered status. Are you saying he's there for the rest of his life? I'm saying they can't use his registered status. Counsel, you really need to answer this question, because we've asked it and the district court asked it, and this is the key to likelihood of success on the merits. There's a statute, there's a regulation, there's a rental agreement, and there's a policy. All of them say the registered sex offender can't live there. When we talk about correcting the mistake, in a sense, they didn't. That lease term is now up. So now we're talking about really what you're arguing is they are obligated to renew a lease that would be unlawful. Why is that? Because they failed when they had authority to deny him admission, and they do not have the authority now. Forever. They can never? Then really the answer to my colleague's question is that they must perpetually renew this lease agreement. Is that your position? Yes. Yes. And also let me correct you that there is no policy against this. There is statute and regulation denying admission, and there is the provisions that they're trying to rely on in the lease, but none of those address termination, and the policy does not address termination. It's not disputed, but they all say a registered sex offender can't live there. May not be admitted. Unless I've missed something. They all say that, right? Yes, that's correct. But this is a current. Did you have a question? I'm sorry. Yes, I did. What about the fact that the statute is there to begin with, and was it a valid contract to begin with? Forget about the fact that it's up for renewal now. But they didn't, given the policy and the lack of authority in the statute to begin with, even if they made a mistake, part of their mistake was they didn't have the authority to enter into the lease contract to begin with. They had knowledge of his registration status, and their actions do not indicate standing on the rights that they're now claiming. But given the statute, the fact that they had knowledge and flubbed it doesn't give them any more authority than the statute grants them, and the statute says he can't be here, period. So the fact that they might have known doesn't make any difference. Well, it does make the difference, and both HUD and the Office of the Lease Powers said that they do not apply to current program participants. So when you're talking about somebody that has a protected interest in public housing and is currently living there, you cannot use the admissions regulations or statute against them to terminate. If you're saying it's a mistake, you cannot What's the authority for that? I'm sorry? What's the authority for that? I mean, it's a matter of contract law. If you don't have contracting authority to begin with, you can't enter into a valid contract. They knew, again, we're saying that they knew of his registrant status and offered him a landlord-tenant relationship, so that that contradicts the reliance on rights that they're now claiming. Let me ask you another question, which has continued to bother me in this particular matter. If I'm a contract law judge, and I'm determining whether we have a contract that's ever put together, I always talk about having to have five elements to the contract. One, they have to have mutual assent. Two, they have to have consideration. Three, they have to have capacity. Well, they may have had all of those, but four, they have to have legality. If the contract is not legal, the course will not enforce it. So how is it that I should enforce this contract? It is illegal. It is totally illegal. There's nothing that suggests it is legal. Why should I enforce it? It seems to me that you rely then on your own sad way. If you're going to enter into an illegal contract, you can't come to me to help you. It's like entering into a contract for sale of marijuana when you're in a state where you can't sell it. If you don't get your money for the marijuana, you can't come to court and ask for money. Because I don't help you. I don't make them push forth with the money. If I have a contract where you should have paid your child support, and you didn't. In fact, you gave all your property to somebody else so you wouldn't have to pay it. And now you want that somebody else to give it back. I don't help you get it back. It's an illegal contract. So why should this be ever any contract I would enforce? And therefore you lose on the first prong. Well, in the state of Nevada, under contract principles, they would hold in Violin vs. Firearm Funds Insurance Company, an insurer was held to uphold a contract. I saw that case. That does not say a court should enforce an illegal contract. No, but this is a valid contract. This is not valid. This is illegal. There's statutes right on point. That contract should not have been entered into. That's not what those statutes say with all due respect. They are in regards to admission and not termination. And there is... That has nothing to do with that. We're not talking admission and termination now. We're talking can you enter into such a contract? No. End of story. When you had knowledge of a basis for invalidation... It doesn't have anything to do with knowledge. It is no. You know, I was selling marijuana. I knew they should have paid me. I knew they should have given me the money. But I'm not going to help them get their money for their marijuana. I'm not going to help them get their money for their property back when they want to avoid giving the money to the kids when they should have. This is an illegal contract. This is not an illegal contract with all due respect. The Housing Authority is a landlord. They regularly enter into these and they draft these contracts with tenants. They're the sophisticated party in this case. And it should be construed against them because they had the knowledge over a year before they offered this contract to him. Counsel, when you say this contract, that's part of the problem. We may be analyzing this different ways. But the contract I think you're referring to and the reason you only want to talk about entering into the contract and not having the express authority to terminate it, you're talking about the first lease term. At this point, the relief you're really asking from us would be an order requiring that a new term be entered into. And that's why I think you're going to need to contend with Judge Smith's problem. At this point going forward, the first year, that first one-year long contract is history. How could we order the Housing Authority to enter into a new one-year lease here? Because he, under 1437 DL, he has a right to a renewable lease on an annual basis. Now they do know about his registered sex offender status. Now they can't enter into that contract, right? Why was the district court wrong in saying you don't have a likelihood of success on the merits given that there's a statute saying the Housing Authority, now that they're on notice, may not enter into this new term? They, I'm sorry, I'm not sure if I understand the question. Sure. The problem we've got is we're reviewing the denial of a motion for preliminary injunction, right? And so it's an abuse of discretion standard, which I think you've correctly and candidly acknowledged is a tough standard for you. But our job is to figure out whether or not the district court abuses discretion when the district court decided there is not a likelihood that the plaintiff is going to succeed in this case because there's a statute and a reg and a lease agreement. And by my read, I think there was a policy that any one of those things, indicating that the, I think quite expressly, that the Housing Authority may not enter into this new contract now that they know he's a registered sex offender. Why is the district court wrong? I think the problem with that is that it doesn't address the fact that he has been admitted there, whether mistakenly or whatever they want to call it now, he is got, he's got a protected property interest. For one year, arguably, if I, if I buy your argument, and it's a really tough pull, but if I buy that argument, he had a one-year expectation. Now, now we're talking about a new one-year lease. Under, as I said before, I'm not sure if I'm getting at your answer, the answer you're seeking, but 1437 D.L. makes that lease renewable on an annual basis. So tenants have a right to. An absolute right is what you're telling me. Well, there are ongoing obligations to the lease that. They could terminate him if they caught him dealing drugs in a public housing facility, right? Yes, that's current criminal activity during the lease term. Okay. So it's not absolute. You just think that once they've made this particular mistake, they're obligated in perpetuity. In this set of circumstances, yes, where the regulations, I'm sorry. Oh, that's okay. Answer her question. Where the regulations contemplate criminal activity is during the lease term, and when they contemplate activity beforehand and before you enter into the lease, it is in reference to discovery after admission of facts that make the tenant ineligible or misrepresentation of facts, and neither of those have occurred here. But doesn't that get to Judge Purcell's question, which is that the reason there is not an express provision to terminate for this reason is because there's an express provision that says he wasn't supposed to be there in the first place? No. I mean, again, this is someone with a protected property interest that you have to abide by in the termination framework. So where Congress contemplated registrants who have been admitted, they are looking towards misrepresentations on applications or discovery after admission, and those are the circumstances that they allow for termination in this particular kind of case, and neither has occurred. I see my time has ended. I apologize. Thank you. Thank you, Counsel. Good morning, Your Honors. Theodore Parker on behalf of the Respondent. I'd like to start off with the questions asked of my opponent. I think we have similar concerns in terms of the Court and our position. We believe, certainly, that our client made a mistake in the admissions process. The comment that was made by the Respondent, that the contract or the lease agreement was an illegal agreement based on 42 U.S.C. 13663. That's clear. And Judge Gordon, I thought, did a very good job of trying to flesh out first the mistake, and we acknowledge the mistake, but why the contract wasn't illegal from the beginning. And that's what, of course, Judge Smith has just touched on. And Judge Pearsall, I believe your comments go directly to what the statute says. And I think that my opponent is trying to have the Court reach an absurd conclusion by having the Court suggest or accept the position that although we made a mistake in the admissions process, that mistake should carry on for the rest of this person's life indefinitely. And that just makes no sense. The reason why there's nothing in the regulation or the statute regarding continued tenancy is because that person shouldn't have been there in the first place. Now, all of the cases that have been utilized or advanced by my opponent all address, with the exception of one, Section 8, which is a different statute, different regulations. The only public housing case that was cited, and none of these cases come from the Ninth Circuit. All of these cases come from New York and from Hartford, and they're all District Court cases. The one case that deals with the public housing regulation and statute dealt with a totally different situation. It didn't deal with the lease, like we have here. It dealt with the statute only. And so the decision made by that Court was based only on the statute and not the lease. You're talking about the main decision? I'm talking about the main decision. That was actually a Section 8 issue, but the Hartford decision in particular dealt with public housing. And so none of these cases fit squarely with the facts we have here. And the same struggle that this Court is finding itself going through right now with my opponent was the same struggle that District Court Judge Gordon went through. Because he tried to analyze it first by the statute, and the statute says what it says, and that the person should never have been allowed into this public housing development. That's number one. Then the Court addressed PIH 212, Part 28, which is a HUD notice that if you find through an error that you've allowed someone who's a lifetime sex offender into your development, you have to take every necessary step to evict them. So that's what we did. And then after going beyond that policy, the judge then at the end reviewed the lease agreement. And the lease agreement and three different provisions address this. One other thing that I wanted to mention that Judge mentioned was this one-year time period. Now the briefs presented by my opponent, both in the opening and the reply brief don't mention this continuation of the tenancy. The injunction that the Ninth Circuit provided truly should have only been to April of this year, one year. And to me it became moot after that because there's an annual recertification requirement for any tenant. And so at the annual renewal, they would have found out anyway because they received notice from Las Vegas Metropolitan Police Department in the interim of the sex offender status. They also found out from Alert ID of the sex offender status of Mr. Zimbelman. And so even if you get past the first year, if you were to accept everything my opponent has said in terms of not being able to evict because a participant has certain rights that an applicant does not, you never get beyond April of 2014. There is no indefinite right because if this gentleman decided to smoke, the lease allows for eviction. If he decided to have a pet, it allows for eviction. Why wouldn't allow for something so serious as a sex offender status when the lease within itself says that's a reason for termination? It would be good for you to win anyway you can, but the winning on the basis of the renewal would be one thing, but if you're going for the whole wealth, you'd want to have a holding that the lease was void ab initio, wouldn't you? I would agree. I would agree. In fact We really don't have that issue in front of us. We do not. We do not. We have a preliminary injunction in front of us. I agree. We don't have it in front of us. It's not in any of the briefs. The legality of the brief of the lease, in fact, is not brief but discussed with Judge Gordon. Let me talk to you about it then if this is an injunction. We've talked a lot about likelihood to succeed on the merits. Let's talk about likely to suffer irreparable harm. Good question. Let's talk about that. This person is out. What's the housing authority's problem? None. They just get a new tenant. So likelihood to suffer irreparable harm. Yes, Judge Smith. Mr. Zimmelman got out of jail in 2010 after being convicted of a sex offense in 2005. He admitted to lewdness with a minor. He also admitted to sex with an underage prostitute. Between 2010 and 2013, when he was finally given the illegal lease, he lived somewhere. There's no information developed in the record by my opponent why Mr. Zimmelman can't return to that living environment. Nothing whatsoever. Is there in the record that he can afford to pay the rent? There is information in the record regarding what he makes, which I believe to be $730 a month, and the rent being $645 for market. It's almost his entire income. It is, Your Honor. That's market. This is a very tough argument for you when you start talking about the harm to your client. It's not my strongest. I will admit to that, Judge Smith. It's certainly not my strongest. The position that we have, the juxtaposition of it, however, is that we have 99 other residents, all seniors, living in that development. And those seniors have grandchildren that visit and spend time with them. This gentleman, unlike the New York case or the Maine case, this is not one where he was released 20 years from a crime without a problem. This is one where he was released two years, two and a half years before admission into our public housing development. Is there nothing in the record about where he lived after he was released from prison? No. And I searched thoroughly last night. In fact, I don't have a mad briefer. I have a very tired briefer. And we searched last night. But there are no references in the record regarding where he lived, just the time period where he did live somewhere other than on federal subsidy or federal public housing. The other concern, and this was mentioned, is there's a child care center right outside these gates. And so we're concerned in the hardships that we have, because with an illegal contract, that puts us on notice now. And every other grandparent in that development will have a potential not only to harm, but the right of action because we now have someone illegally staying in that development with 99 other grandparents. What about the balance of equities? Opposing counsel is right, isn't she? He disclosed it right on the form. I'm sorry, I didn't hear. I said what about the balance of equities? Isn't opposing counsel correct that her client disclosed this prior, this status right on the form? I don't disagree. There are some certain concessions I make just to keep my credibility. And certainly the client, Mr. Zimmelman, placed on his admissions that he was a recent, he was convicted of a sex crime. He did put that there. It was missed. Well, it's not just convicted. He said he was required to register, didn't he? He said he was required to register on the basis of having sex with an underage prostitute. Isn't it his registration status that is triggering here? It's part, it's the registration status, of course, being informed by the Las Vegas Metropolitan Police Department and AMBER and Alert ID. He's a registered sex offender. Yes, he is. Under Nevada statutes, he's required to do so. And he disclosed that status, right? I'm not trying to make this hard. It just seemed to me that that is uncontested here. That is uncontested. All right. That is uncontested. The... So what about the public interest? And that's what I was referring to earlier, Judge Smith. We have the interest of the other 99 other homeowners there, or home... Well, I frankly think you've made a pretty good argument on tip of the balance of the equities on that. We've got equities about your particular people who are there, about the establishment, which is right next door, and we weigh that against whatever harm he had. That's what we do on balance of the equities. The you did know about it has to play into that, but that's the balance. So when I get to public interest, is the injunction in the public interest? It's certainly not in the public interest. In fact, we're concerned, and this is not developed as well as it should be in the records. I will concede that up front. But we have the PIH 21228 from HUD. So now potentially we compromise additional funding for our federal programs because we're not adhering to HUD's regulations. Is that the guideline? Wait a minute. Is that the guideline? That is. That's PIH 212 hyphen 28. It's part of the record, Your Honor. Yes. If a housing authority discovers that a household member was wrongly admitted, you have to immediately pursue eviction. Exactly, Your Honor. And so we're concerned, and we've brought that forward to Judge Gordon, and that's in the transcript. When Judge Gordon had to balance the our failure to comply with not only the statute as we saw it, but the direct HUD notice, which is not only a guidance, but it's a policy statement from HUD that we have to comply with. The only other thing I would say Is the end of that sentence or you risk losing funding? No, that's not the end. There is what we fear is HUD coming and looking at our leases and finding that. And then we get HUD audits and HUD findings. And when we get those, we get reductions in funding. Well, the reason I'm asking this is because I'm trying to understand your position, your answer to Judge Smith's question about the public interest. Yes. And why I say it's a public interest, we're the only housing authority in Southern Nevada. And so our funding allows us to provide that service to all Southern Nevada residents. So when we have a compliance issue, we have a Southern Nevada housing issue. Because you could lose funding? Because you could be shut down or what is it? Well, that's what I was explaining. HUD comes annually and audits all of your public housing files. And having received this notice and having made that mistake and not done what HUD has required us to do would subject us to findings. Now, something I found to be somewhat curious, if not hypocritical, my opponent references a HUD OIG suggestion that perhaps there's a difference between the applicant and the participant's rights, which is not even as strong in guidance as a PIH formal notice from HUD. So my opponent asks this court not to give any deference to the PIH notice from HUD, but to give deference to a less report, lesser report from HUD OIG. It really makes no sense and should not be persuasive to this court, I hope. Now, I appreciate your hard argument here that this is pretty important, but I really don't have to buy your argument, do I? I just have to determine if the district court abused its discretion in buying it? That's correct. That is correct. I'd like to say one thing and I wanted to, hopefully I had enough time to say it. I've been here probably a dozen or more times and Judge Smith, this is the first time that one of the judges have come into the gallery and shook hands. I truly was surprised and so I apologize for that. No need to apologize. Judge Kristen often does it with me. She must have been off doing better things this morning. I'll come tomorrow and complain on doing it. But I appreciate that and I appreciate your argument. Thank you very much, Judge. Counselor, I did give you, I think, all of the time you had or does she have a little more, Madam Clerk? She is over. I'll give you 30 seconds to sum up if you want. Thank you. Just to sum up what I said earlier that in situations where clients are ineligible termination is then limited to situations of misrepresentation of facts in the application or discovery of facts that would make the tenant ineligible. And as I've said, neither of those situations apply to Mr. Zimmelman. Also, in reference to the public interest and the concerns that opposing counsel was talking about, those concerns were paramount when they violated the admission statute, namely 13,663. And they cannot be the basis for them to continue a mistake by violating termination regulations and statute at this time. Turning to the HUD notice. Well, I think you've had it. I gave you a 30 and you've got 47. Thank you very much. This court is now in recess. This case is submitted.
judges: Piersol, SMITH, CHRISTEN